AB:JV
F# 2019R01298

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

EMMANUEL ASUQUO OKON,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(18 U.S.C. §§ 659, 2)

No. 19-M-876

EASTERN DISTRICT OF NEW YORK, SS:

ROBERT CARASITI being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

On or about September 24, 2019, the defendant EMMANUEL ASUQUO OKON, together and with others, knowingly did embezzle, steal, and unlawfully take, carry away and conceal, and by fraud and deception obtained from a vehicle and from an aircraft, air cargo container, air terminal, airport, aircraft terminal and air navigation facility, and intermodal container, trailer, container freight station, warehouse, and freight consolidation facility, with intent to convert to his own use goods and chattels moving as and which are part of and which constitute an interstate shipment of freight, express and other property, the aggregate value of which is equal to or greater than $1,000.

(Title 18, United States Code, Sections, 659 and 2)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent with the FBI for five years and am presently assigned to the John F. Kennedy International Airport ("JFK Airport") Resident Agency in New York. I have been involved in the investigation of numerous cases, mostly involving terrorism. As part of those investigations, I have made arrests, interrogated subjects, collected evidence and interviewed witnesses. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and reports from, and conversations with, other law enforcement officers involved in the investigation.

2. On or about September 24, 2019, a security company (the "Victim Security Company") transported in an armored vehicle eight bags, which contained bulk cash in United States and foreign currency, from a facility at John F. Kennedy International Airport ("JFK Airport") in Queens, New York. Employees of a separate company authorized to operate at JFK Airport brought the eight bags to a Delta Airways aircraft located at Gate C-70. They were escorted by security. There, Quincy Thorpe, an employee of Delta Ground Services ("DGS"), scanned and loaded bags into Delta Airways Flight 1225, bound for Miami, Florida ("Flight 1225"). Once Flight 1225 arrived in Miami, the Victim Security Company realized that one of the eight bags, which itself contained smaller bags, was missing (the "Stolen Bag"). According

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3

to the Victim Security Company, which had custody over the Stolen Bag, the Stolen Bag contained bulk cash of approximately $258,205 in value.

       3.    Security surveillance obtained from Delta shows an individual consistent with the appearance of Quincy Thorpe scanning and loading some of the eight bags onto Flight 1225.[2] Other DGS employees stated in sum and substance and in part that Thorpe was responsible for loading bags onto Flight 1225. Additionally, the other seven bags, which were loaded onto the plane, were scanned by a scanner with an identification unique to Thorpe.

       4.    Security surveillance shows Thorpe not scanning the Stolen Bag, but instead placing it into a container attached to a vehicle. Specifically, Thorpe placed the Stolen Bag into a luggage trailer attached to a vehicle (the "Tug and Trailer"). After loading some of the bags onto Flight 1225, Thorpe drove the Tug and Trailer to a Terminal 2 underground entrance, where he exited the vehicle. Security surveillance shows that Thorpe was using a cell phone and that the Trailer curtain was closed. Shortly thereafter, a Delta Airlines van pulled up to the Terminal 2 underground entrance and Thorpe walked over and spoke to the van driver through the passenger side window.

       5.    After speaking to the Delta Airlines van driver, the van pulled away. Thorpe re-entered the Tug and Trailer and also pulled away from the Terminal 2 underground entrance. Both the Delta Airlines van and the Tug and Trailer then traveled to the same remote area of the airport where they stopped briefly behind a parked aircraft. Less than one minute later, both vehicles left the remote area and returned directly to the same Terminal 2 underground entrance. When they arrived back at the Terminal 2 underground entrance, the previously closed

---

[2] On or about September 26, 2019, FBI agents interviewed Thorpe. Thorpe stated in sum and substance and in part that he was responsible for loading bags into Flight 1225 and knew that the bags he was loading had valuables. Thorpe was subsequently arrested and charged with a violation of 18 U.S.C. § 659.

side of the Trailer was open and empty.   I believe that Thorpe traveled with both the Tug and Trailer and the Delta Airlines van to the remote area so that he could move the Stolen Bag from the Tug and Trailer into the Delta Airlines van away from security surveillance.

6. After returning the Tug and Trailer to the Terminal 2 underground entrance, Thorpe exited the vehicle and entered the Delta Airlines van.   The Delta Airlines van then left the airport secured area of operations and proceeded to another unsecured area of the airport, specifically to a parking lot behind Building 21.   Between 9 and 9:30 a.m., and approximately eleven minutes after the Delta Airlines van arrived in the parking lot, a blue Nissan Sentra arrived and pulled up behind the van.   Security surveillance shows that the driver of the blue Nissan Sentra was a black male with a beard, which is consistent with the appearance of the defendant EMMANUEL ASUQUO OKON.   In addition, a witness has positively identified the Sentra driver as the defendant EMMANUEL ASUQUO OKON.

7. Approximately two minutes after the Sentra arrived at Building 21, the van and the Sentra left at the same time.   The Delta Airlines van returned to Terminal 2 secured area of operations.   As the van proceeded through a security checkpoint on the way to the Terminal 2 secured area of operations, security surveillance shows that Thorpe was no longer in the vehicle.   Nonetheless, minutes later, Thorpe entered Terminal 2 using his security identification.

8. Interviews of witnesses identified the defendant EMMANUEL ASUQUO OKON as a friend and close associate of Thorpe.   OKON resides in Springfield Gardens, Queens, New York, with his domestic partner.   OKON's domestic partner owns a blue Nissan Sentra.[3]   License plate readers on the highway entrances to JFK airport shows OKON's domestic

---

[3]  OKON's domestic partner was out of the country on September 24, 2019.   In an interview, she stated, however, that OKON drove the Nissan Sentra frequently and has access to the keys.

5

partner's Sentra inbound to JFK Airport at 9:13 a.m. on September 24, 2019, and outbound at 9:16 a.m.

9. On September 29, 2019, law enforcement located the blue Nissan Sentra registered to the defendant EMMANUEL ASUQUO OKON's domestic partner in Queens, New York. OKON's domestic partner consented to a search of the vehicle. During the search of the blue Nissan Sentra owned by OKON's domestic partner, I found an envelope containing a transfer manifest belonging to the Victim Security Company and a Delta Air Waybill for the September 24, 2019 Flight 1225, and associated with "Piece 8 of 8." OKON does not now, and has never been, employed by the Victim Security Company, nor was he employed by Delta Airlines on September 24, 2019.

WHEREFORE, your deponent respectfully requests that the defendant EMMANUEL ASUQUO OKON be dealt with according to law.

S/ Robert Carasiti<br>
ROBERT CARASITI<br>
Special Agent<br>
Federal Bureau of Investigation

Sworn to before me this
30th day of September, 2019

S/ Peggy Kuo
THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK