

U.S. Department of Justice

United States Attorney
Eastern District of New York

JPL:JV/DAS
F. #2019R01298

271 Cadman Plaza East
Brooklyn, New York 11201

July 21, 2023

By ECF and Email

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Quincy Thorpe and Emmanuel Asuquo Okon
              Criminal Docket No. 19-492 (MKB)

Dear Chief Judge Brodie:

        The government respectfully moves the Court for in limine rulings in connection with the trial in the above-captioned matter. The government seeks rulings: (1) precluding the defendants from arguing or eliciting testimony to relitigate issues underlying defendant Emmanuel Asuquo Okon's motion to suppress or to insinuate that evidence was obtained unlawfully or improperly; (2) precluding evidence or argument regarding any motive for investigating and arresting the defendants or that the defendants were selectively prosecuted; (3) precluding evidence or argument relating to any consequences the defendants may face upon conviction; (4) precluding evidence or argument about the defendants' lack of criminal history or of their good character through specific instances of conduct; (5) precluding the defendants from offering their own hearsay statements; (6) precluding the defendants from referencing or arguing to the jury about the amount of time the defendants have been under indictment; and (7) compelling the production of defense case-in-chief exhibits under Federal Rule of Criminal Procedure 16.

        As set forth below, the government's motions should be granted in their entirety.[1]

---

[1]    The government cannot anticipate every type of evidence and testimony that will be offered at trial and does not detail herein all the specific testimony the government will elicit at trial. The government respectfully reserves its right to supplement this filing with additional papers setting forth legal authority for the introduction of evidence and/or additional motions in limine as legal issues are identified closer to trial, the government interviews potential witnesses, or in response to any objection by defense to the introduction of evidence. The government will meet and confer with defense counsel to attempt to resolve any issues as they arise prior to engaging in motion practice.

I.   Background

   A.   Factual Background

On or about September 24, 2019, a security company, Loomis International ("Loomis"), transported, in an armored vehicle, eight bags containing United States and foreign currency to John F. Kennedy International Airport ("JFK") in Queens, New York. After the eight bags passed a security screening and the number of bags was reconciled against the shipping records, the bags were transported to a Delta aircraft located at Gate C-70. There, the defendant Quincy Thorpe, a Delta employee, scanned and loaded multiple bags onto Delta Flight 1225, bound for Miami, Florida ("Flight 1225"). When Flight 1225 arrived in Miami, one of the eight bags was missing (the "Stolen Bag"). According to Loomis, the Stolen Bag contained approximately $258,205 in cash.

Thorpe was responsible for loading the eight bags onto Flight 1225. The seven Loomis bags that were loaded onto the plane were scanned by a scanner with an identification unique to Thorpe. After the seven bags were loaded onto Flight 1225, Thorpe can be seen on surveillance footage driving a luggage trailer attached to a vehicle (the "Tug" and "Trailer") to a Terminal 2 underground entrance, where he left the vehicle. Security surveillance shows that, at that time, the Trailer curtain was closed.

Security surveillance also shows that, while at the Terminal 2 underground entrance, Thorpe was using a cell phone. Shortly thereafter, a Delta van pulled up to the Terminal 2 underground entrance and Thorpe walked over and spoke to the van driver through the passenger-side window. After speaking to the Delta van driver, Thorpe re-entered the Tug and Trailer. The Delta van and the Tug and Trailer then pulled away from the Terminal 2 underground entrance and traveled to a remote area of the airport, where they stopped briefly. Less than one minute later, both vehicles returned directly to the same Terminal 2 underground entrance they had just left. When they arrived back at the Terminal 2 underground entrance, the previously closed side of the Trailer was open and empty.

After returning the Tug and Trailer to the Terminal 2 underground entrance, Thorpe left the vehicle and entered the Delta van on the passenger side. The Delta van then left the airport's secured area of operations and proceeded to a parking lot in an unsecured, publicly accessible area of the airport. During the ride to the parking lot, Thorpe spoke on the phone to someone named "Okon," and directed "Okon" to their location. The defendant Emmanuel Asuquo Okon did not work at JFK or for Loomis, but he was a friend of Thorpe's.

Between 9:00 and 9:30 a.m., and approximately 11 minutes after the Delta van arrived in the parking lot, a blue Nissan Sentra, which law enforcement later determined was owned by Okon's domestic partner (who was out of the country at the time), arrived and pulled up behind the van; a witness later identified the Nissan Sentra driver as Okon. Approximately two minutes after the Nissan Sentra arrived at Building 21, the van and the Sentra left at the same time, and the Sentra left JFK shortly thereafter.

On September 29, 2019, law enforcement located the blue Nissan Sentra in Queens, New York. Okon's domestic partner consented to a search of the vehicle. During the

2

search of the blue Nissan Sentra, law enforcement found a manila envelope on the floor of the car containing Loomis paperwork and a Delta Air Waybill for Flight 1225 bearing the language, "Piece 8 of 8."

  B. <u>Procedural History</u>

    On September 26, 2019, Thorpe was charged by complaint with stealing cargo, in violation of 18 U.S.C. § 659.  ECF No. 1.  On September 30, 2019, after law enforcement found and searched the blue Nissan Sentra, Okon was charged by complaint with the same offense.  <u>Id.</u>  On October 24, 2019, a grand jury sitting in the Eastern District of New York returned an indictment charging both defendants with conspiracy to steal cargo, in violation of 18 U.S.C. § 371 (Count One), and stealing cargo, in violation of 18 U.S.C. § 659 (Count Two).  ECF No. 7.

    On March 17, 2021, Okon filed a motion to suppress the evidence seized from the blue Nissan Sentra.  ECF No. 38.  First, Okon argued that even though his domestic partner owned the car, he was allowed to use it, and he therefore had standing to challenge the search.  <u>Id.</u> at 5-6.  Second, he claimed that his domestic partner's consent to search the vehicle was involuntary because (a) she "was not advised that she could refuse to consent" and (b) the circumstances led her to believe that she needed to consent or risk losing her job as a Sergeant with the New York City Police Department ("NYPD").  <u>Id.</u> at 6-7.

    The Court conducted a hearing on Okon's motion that spanned two days—November 30, 2021 and December 9, 2021.  Over the course of the hearing, the Court heard from three witnesses: a Special Agent with the Federal Bureau of Investigation ("FBI") who interviewed Okon's domestic partner and later that night obtained consent to search the blue Nissan Sentra; an NYPD Lieutenant who interviewed Okon's domestic partner separately from the FBI and later overheard her provide her consent to the FBI to search her vehicle; and Okon's domestic partner herself.  Following the hearing, the parties submitted additional briefing.  <u>See</u> ECF Nos. 49, 51, 52.

    On September 9, 2022, the Court denied Okon's motion, holding was that Okon's domestic partner "voluntarily consented to the search of the blue Nissan."  ECF No. 55 at 9.  The Court concluded that Okon's domestic partner was not in law enforcement custody at the time she consented, which weighs in favor of a finding of voluntariness.  <u>See id.</u> at 9-11.  The Court also found "unpersuasive" that Okon's domestic partner "was given a coercive choice between consent and loss of employment."  <u>Id.</u> at 11.  In addition, the Court noted that even though Okon's domestic partner "was never informed of her right to refuse consent . . . [her] extensive law enforcement experience as a twenty-six year veteran of the NYPD and her supervisory rank of Sergeant at the time of the incident supports an inference that she was fully knowledgeable of her right to refuse."  <u>Id.</u> at 14.  The Court therefore denied the motion to suppress the fruits of the search.  <u>Id.</u> at 15.

    Jury selection and trial are set to begin on September 11, 2023.

II.  Argument

    A.  The Court Should Preclude Evidence or Argument that Seeks to Relitigate the Suppression Motion or to Insinuate that Evidence Was Improperly Obtained

As discussed above, following a two-day suppression hearing during which the Court heard evidence from three witnesses and substantial briefing from the parties, the Court denied Okon's motion to suppress in its entirety. The defendants should thus be precluded from arguing, commenting or eliciting testimony about the legality of the search of the blue Nissan Sentra challenged in Okon's motion to suppress, or otherwise arguing that evidence was improperly obtained.

Federal Rule of Evidence 104 makes clear that the Court decides "preliminary questions" outside the presence of the jury, including whether evidence is admissible. Whether the search of Okon's vehicle was lawful is one such preliminary question, and the Court decided this issue, denying Okon's motion to suppress after hearing witness testimony and reviewing multiple rounds of briefing from the parties. To permit the defense to argue now to the jury that the search of Okon's vehicle was unlawful would flout Rule 104 and invite a needless and irrelevant mini-trial on the scope of the Fourth Amendment and whether law enforcement properly obtained the evidence in this case. See United States v. Lights, 2016 WL 7098633, at *1-2 (S.D.N.Y. Dec. 5, 2016) ("The stop and subsequent searches were all based on valid probable cause. This issue has been litigated and decided. No reference to the illegality of the stop or subsequent searches will be permitted at trial."); see also Lego v. Twomey, 404 U.S. 477, 489 (1972) (finding that after a trial judge has ruled on a defendant's claim, the defendant is not "entitled to have the jury decide the claim anew"); United States v. Stewart, 433 F.3d 273, 313 (2d Cir. 2006). The same problems would emerge if the defendants were to argue, as Okon did in his motion to suppress, that law enforcement employed improper or nefarious tactics in conducting their investigation. Any such argument would be irrelevant under Rule 401, having no bearing on the question at issue, and any arguable probative value would be substantially outweighed by the risks enumerated in Rule 403, including unfair prejudice, confusion of the issues, and misleading the jury, as well as undue delay and waste of time. See also Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Ultimately, permitting the defense to relitigate the suppression issues already decided by this Court would distract the jury from the questions actually presented and invite the jurors to decide the case based on their feelings about law enforcement investigations rather than the facts. The Court should therefore preclude such argument.

    B.  Any Alleged Motive for Investigating and Arresting the Defendants Is Not Properly Presented to the Jury

The government also requests that the defendants be precluded from making any argument or questioning any government witness regarding the motivations or intent of law enforcement officers in investigating and/or arresting the defendants. Claims of selective prosecution are not properly presented to the jury.

4

"The Supreme Court has observed that a selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.  Because it involves a defect in the institution of the prosecution, the selective prosecution defense is an issue for the court rather than the jury."  United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997) (internal quotation marks omitted) (citing United States v. Armstrong, 517 U.S. 456, 463 (1996)).  Any claim alleging a defect in instituting the prosecution based on alleged governmental motives must be raised with the Court in advance of trial.  Fed. R. Crim. P. 12(b)(3)(A); United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011).  Because the government's alleged motive in bringing charges against a defendant is irrelevant to guilt, by asking the jury to focus on it, the defense would be encouraging the jury to decide the case on the basis of something other than the evidence admitted at trial and the elements of the charged crimes.  That is impermissible.  See, e.g., United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt").  Courts therefore regularly preclude criminal defendants from presenting such arguments to the jury in the opening and summation, as well as in cross examinations of the government's witnesses.  See, e.g., Farhane, 634 F.3d at 167; United States v. Stewart, 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004).  The Court should do the same here.

  C. <u>The Court Should Prohibit the Defendants from Mentioning Any Adverse Employment Actions, Punishment, or Other Collateral Consequences Related to the Instant Offense</u>

  The Court should preclude the defense from inviting the jury to decide this case on the basis of any consequences the defendants have already suffered or the punishment that may be imposed if they are convicted.  The consequences of conviction are irrelevant to the issues for the jury, and any related argument would improperly invite jury nullification.

  "It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."  United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).  Courts have repeatedly precluded evidence of the consequences of a guilty verdict on the grounds that such evidence is irrelevant, unfairly prejudicial and outside the province of the jury.  See, e.g., Shannon v. United States, 512 U.S. 573, 579 (1994) (noting that argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their fact finding responsibilities, and creates a strong possibility of confusion"); United States v. Watts, 934 F. Supp. 2d 451, 464 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result.").  Indeed, where, as here, the jury has no role at sentencing, it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"  Shannon, 512 U.S. at 579 (quoting Rogers v. United States, 422 U.S. 35, 40 (1975)); see United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences.").  In short, guilt should determine punishment, not the other way around, and the only purpose for invoking punishment at trial would be an "attempt[] to serenade [the] jury with the siren song of nullification."  United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993).  Similarly, any

5

adverse consequences that the defendants have already suffered would have no bearing on their guilt or innocence and would thus be "irrelevant to the jury's task." Shannon, 512 U.S. at 579; see also Fed. R. Evid. 401.

The defendants should therefore be precluded from mentioning at trial any collateral consequences—past or future—or potential punishment associated with their prosecution and/or conviction.[2]

### D. The Court Should Preclude the Defendants from Offering Evidence or Argument Regarding Their Criminal History and Personal Backgrounds

The Court should preclude the defendants from offering evidence or argument concerning their personal background, including their relatively minimal criminal history.[3]

The Federal Rules of Evidence ordinarily prohibit witnesses from proving good character through specific instances of conduct. See Fed. R. Evid. 405(a). The Second Circuit has concluded, however, that evidence of a lack of prior convictions or arrests is admissible for the limited purpose of gauging the credibility of a testifying witness. See United States v. Blackwell, 853 F.2d 86, 88 n.1 (2d Cir. 1988) (noting the "relatively low probative value" of this evidence). Consistent with Blackwell, the government requests that the defendants be precluded from informing the jury of their relatively minimal criminal history, unless and until they choose to testify. Counsel should not be permitted to advise the jury of the defendants' relatively minimal criminal history in opening statements, through cross-examination, or otherwise.

Beyond the issue of his criminal history, details about the defendants' backgrounds have no bearing on the issues in this case because they are not probative of whether the defendants committed the charged crimes. For example, whether the defendants have successfully maintained employment or otherwise demonstrated good character in certain instances does not make it more or less likely that they committed the conduct charged in the indictment. See Fed. R. Evid. 401. Moreover, the clear purpose for introducing evidence at trial of these extraneous details would be to elicit sympathy for the defendants or distract from the facts at issue. The risk of juror confusion and unfair prejudice is manifest because the jury would be asked to look past the defendants' conduct in this case and instead consider other

---

[2] To the extent that one of the defendants exercises his right to testify, the government should be permitted to cross-examine him regarding the potential consequences of conviction that he faces because, then, it is relevant to the defendant's credibility as a witness. See Davis v. Alaska, 415 U.S. 308, 316 (1974) (discussing use of cross-examination to reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues . . . in the case at hand. The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony" (internal quotation omitted)).

[3] Thorpe has twice been convicted of operating a motor vehicle while under the influence of alcohol or drugs in violation of New York Vehicle and Traffic Law § 1192—he had his license suspended for 90 days in 2008 and was then sentenced to 3 years' probation in 2015.

personal information not relevant to an assessment of the charged conduct. This sort of emotional appeal to the jury's sympathy should be excluded under Rule 403. See Fed. R. Evid. 403, Adv. Comm. Notes (explaining that courts have broad discretion to exclude evidence if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). Indeed, when evidence is of limited probative value, it should be excluded if it has the "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses." United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009); see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that the defendant had son with cerebral palsy); United States v. Kaufman, 2021 WL 51521, at *1-2 (S.D.N.Y. Jan. 6, 2021) (precluding evidence and argument "concerning defendant's family background, health conditions, [and] other personal factors" as it would "would invite the jury to determine the case on the basis of factors that are not relevant to guilt or innocence"); United States v. Battaglia, 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); United States v. Harris, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

Accordingly, the defendants should be precluded from using the absence of a significant prior felony criminal record or any other evidence of specific instances of good conduct to prove good character. To allow otherwise would confuse the issues under consideration in violation of Rule 403, and violate Rule 405(b)'s restrictions against proving good character through specific instances of conduct.

E. The Court Should Permit the Government to Admit the Defendants' Statements and Preclude the Defendants from Introducing Such Statements

The government is permitted to introduce a defendant's out-of-court statements pursuant to (i) Federal Rule of Evidence 801(c) when the statements are not being introduced for their truth (e.g., a defendant's lies); or (ii) Federal Rule of Evidence 801(d)(2)(A) as statements of the opposing party. United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982); see United States v. Nieves, 354 F. App'x 547, 551 (2d Cir. 2009) (affirming district court ruling to admit recorded taped call between defendant and gang associate, holding the statements in the call "were not hearsay because they were either not admitted for the truth of the matter asserted or were non-hearsay admissions under Federal Rule of Evidence 801(d)(2)").

The government anticipates introducing certain statements of the defendants during its case-in-chief. Specifically, the government intends to introduce the following statements Okon made during his September 28, 2019 interview with law enforcement:

- Okon's admission that he and Thorpe are friends;

- Okon's admission that he frequently drives vehicles that are registered to his wife, including the blue Nissan Sentra;

- Okon's admission that he flew to Cancun, Mexico on the afternoon of September 24, 2019;

7

- Okon's false exculpatory statement that he did not drive the blue Nissan Sentra on September 24, 2019; and

- Okon's false exculpatory statements that he did not drive to JFK at all on September 24, 2019.

Each of these statements is admissible non-hearsay.[4]  See Fed. R. Evid. 801(c), 801(d)(2); Anderson v. United States, 417 U.S. 211, 219-20 (1974); United States v. Pedroza, 750 F.2d 187, 203 (2d Cir. 1984) (statement "offered for its patent falsity" is not hearsay).  The government respectfully requests that the Court admit such statements if offered by the government.

    The government's ability to introduce the defendants' statements does not create a parallel ability for the defendants to do the same.  "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."  Marin, 669 F.2d at 84; see also United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003) (concluding the "Government was free to introduce a statement as an admission by a party-opponent," but that the defendant "had no right to introduce it on his own").  This is the case even where the government offers parts of those statements.  See, e.g., United States v. Hill, 658 F. App'x 600, 605 (2d Cir. 2016) (affirming district court's parsing of a defendant's recorded statement to admit the discrete inculpatory statements and exclude the other self-serving statements that he was "innocent"); United States v. Johnson, 507 F.3d 793, 796-97 (2d Cir. 2007) (holding that the court properly bifurcated a defendant's post-arrest statement and precluded the defense from introducing a self-serving portion of the defendant's post-arrest statement).  Were the law otherwise, a defendant "could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury."  United States v. McDaniel, 398 F.3d 540, 545 (6th Cir. 2005); see also United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004) (noting that a defendant may not "attempt to get his side of the . . . story in front of the jury without him testifying and opening him[self] up to cross-examination").  Accordingly, the government respectfully requests that the Court preclude any attempts by the defendants to introduce their own out-of-court statements, including any additional statements Okon made to law enforcement in his September 28, 2019 interview.

   F. <u>The Court Should Preclude the Defendants from Referencing or Arguing to the Jury About the Amount of Time the Case Has Been Pending</u>

    The defendants should be precluded from referencing to the jury the amount of time the case has been pending.  Any argument about the period that the defendants have been

---

[4] None of Okon's statements that the government seeks to admit implicate any issues under Bruton v. United States, 391 U.S. 123 (1968).  The only statement that references Thorpe is not a confession at all—thus falling outside the "narrow" scope of Bruton, Richardson v. Marsh, 481 U.S. 200, 208 (1987)—but simply establishes the close relationship between the two defendants.  Such statements are admissible.  See, e.g., United States v. Zahrey, 963 F. Supp. 1273, 1291 (E.D.N.Y. 1997) (admitting under Rule 801(d)(2)(A) statements of one defendant that he was friends with the other defendants).

8

under indictment is not relevant. See Fed. R. Evid. 401, 402. The only theoretical relevance of this issue is in the context of potential Speedy Trial Act violations, which (1) would be a question of law for the Court, not the jury, and (2) is not applicable here given the defendants' repeated consents to the exclusion of time. Moreover, any marginal relevance would be outweighed by unfair prejudice and the risk of confusing the issues and misleading the jury. See Fed. R. Evid. 403. Indeed, any invocation of the amount of time the defendants have been under indictment would be a thinly veiled invitation for jury nullification, which is manifestly improper. See United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court. . . . We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that the courts may permit it to occur when it is within their authority to prevent."); see also United States v. Knox, 687 F. App'x 51, 54-55 (2d Cir. 2017) (holding that it was "appropriate" to instruct the jury that "the government is not on trial"). The government therefore respectfully requests that the defendants be precluded from mentioning to the jury the length of time that this matter has been pending.[5]

  G. The Defendants Should Produce Any Evidence They Intend to Admit in Their Case-in-Chief

  Despite the government's repeated requests, the defendants have not identified for the government any evidence—such as papers, documents, data, photographs, or other tangible objects—that the defendants intend to use in their case-in-chief. The defendants have also not identified any similar evidence they intend to admit during cross-examination of the government's witnesses. The government requested defendants' reciprocal Rule 16 discovery in its initial discovery production on January 22, 2020, and has routinely reiterated its request since. Pursuant to Federal Rule of Criminal Procedure 16(b), the defendants must provide in discovery any such evidence they intend to introduce during their case-in-chief, including during the cross-examination of any government witnesses, other than those produced to them by the government. The government requests the Court order the defendants to produce any evidence they intend to use in their case in chief.

  Rule 16(b) governs a defendant's disclosures in a criminal case. In relevant part, it requires a defendant to provide the government with documents and records that the defendant "intends to use . . . in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). The Rule's purpose "is to avoid surprise and gamesmanship" and "it definitely contemplates reciprocity in the production of evidence that both parties intend to introduce in their case-in-chief at trial." United States v. Hsia, 2000 WL 195067, at *1 (D.D.C. Jan. 21, 2000) (internal quotations omitted).

  Of course, Rule 16 does not require a defendant to disclose evidence he intends to use for purposes of cross-examining a government witness. But to the extent that a defendant

---

[5] The government does not seek to preclude cross-examination or argument that memories fade over time or bar reference to the fact that the events at issue occurred in September 2019. Rather, the government seeks to preclude argument that suggests that the defendants' awaiting trial for approximately four years was somehow improper or punitive.

9

seeks to admit evidence during such cross-examination to affirmatively support his theory of the case, such evidence falls within the ambit of Rule 16 and must be produced. As the District Court for the District of Columbia has explained:

> A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense." Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may be used to support her defense . . . . The cross-examination of these and other government witnesses therefore is properly seen as part of defendant's case-in-chief if it buttresses her theory of the case.

Hsia, 2000 WL 195067, at *2 (citing Black's Law Dictionary 207 (7th ed. 1999)). The Hsia court distinguished evidence introduced by the defense through a government witness—which falls within Rule 16 and must be disclosed—from materials used by a defendant "merely to impeach a government witness, and not as affirmative evidence in furtherance of [the defendant's] theory of the case, [which] is not part of [the defendant's] case-in-chief." Id. at *2 n.1. Numerous other district courts have recognized this same distinction. See United States v. Napout, 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) ("Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant."); United States v. Swenson, 298 F.R.D. 474, 477 (D. Idaho 2014) ("Defendants have a duty to produce any exhibits they intend to use at trial during cross examination of a government witness other than for impeachment purposes."); United States v. Holden, 2015 WL 1514569, at *4 (D. Or. Mar. 19, 2015) (holding, based on Swenson and Hsia, that a defendant must disclose non-impeachment substantive evidence that the defendant seeks to use in examination of government or defense witnesses); United States v. Larkin, 2015 WL 4415506, at *5 (D. Nev. July 20, 2015) (finding the approach adopted in Holden, Swenson and Hsia is "consistent with the structure and integrity of Rule 16(b) as a whole"); United States v. Aiyaswamy, 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017).

   Here, the defendants have yet to identify a single document they intend to use during their case-in-chief or in cross-examination of the government's witnesses. Perhaps the defendants' failure to provide reciprocal discovery is a result of having none to produce; they may not intend to introduce any covered evidence at trial, which is their right. The defendants, however, cannot rely upon an undefined defense strategy to avoid producing documents in compliance with the spirit and letter of Rule 16.

   The government therefore respectfully requests that the defendants be ordered to produce any evidence they intend to use in their case-in-chief as soon as possible, and no later than August 28, 2023, whether the defendants intend to use that evidence after the government rests or during cross-examination of government witnesses.

III.     Conclusion

        For the foregoing reasons, the government respectfully submits that its motions <u>in limine</u> should be granted.

Respectfully submitted,

BREON PEACE
United States Attorney

By:          /s/        
       John Vagelatos
       Dylan A. Stern
       Assistant U.S. Attorneys
       (718) 254-6182/6213

cc:     Clerk of the Court (MKB) (by ECF)
       Counsel of record (by ECF and e-mail)